By the Court.
The article was a libel upon the presiding judge, but that alone did not form the basis of the information. The intention of the publication was to insult and intimidate the judge, degrade the court, destroy its power and influence, and thus to bring it into contempt; to inflame the prejudices of the people against it; to lead them to believe that the trial then being conducted was a farce and an outrage, which had its foundation in fraud and-wrong on the part of the judge and other officers of the court, and, if communicated to the jury, to prejudice their minds, and thus prevent a fair and impartial trial. Besides, the tendency was, when *490 read by the judge, to produce irritation, and, to a greater or less extent, render him less capable of exercising a clear and impartial judgment. It therefore tended directly to obstruct the administration of justice in reference to the case on trial, and its publication was a contempt of court. The fact that, before its publication, a professional opinion was given that the publication would not be a contempt, does not change the essential character of the defamatory article, nor relieve the respondent of responsibility for its origin and dissemination. Neither was he justified in resorting to such means to right any real or imaginary wrong to himself in respect to the finding of the indictment. A plea' in abatement would have searched the record and caused the indictment to be set aside, if found by an illegal body, or procured by improper means.
The publication came within sec. 5639, Rev. Stats., which reads: “A court, or judge at chambers, may punish summarily, a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice.” It is true that the article was not written, nor was it' circulated by the respondent, in the presence of the court. Indeed, it was written in the city of Cincinnati, though dated at Columbus. But the publication was in the court room, as well as elsewhere. It was intended to have effect, and did have effect, in the court house at Columbus, and the writer was just as much responsible for that effect as though he had in the court room itself, and while the trial was progressing, circulated and read aloud the article, or uttered the libelous words verbally. The acts were thus done, if not in the very presence of the court, at least so near thereto as to obstruct its business. For violation of the foregoing section of the statute the punishment is within the discretion of the court. Section 5645, which provides for the punishment by fine of not more than five hundred dollars, and imprisonment for not more than ten days, applies to offenses covered by section 5640, but not to the preceding one above quoted. The discretion here given is a sound, reasonable discretion, and its exercise in a case of this kind is reviewable. It, therefore, becomes unimportant to consider the question much argued, viz: *491 whether or not the legislature may interfere with the inherent® power of courts to punish for contempt. And, as the court had power to try summarily, the form of the complaint is not a material question.
Though the libel was, in large part, against the presiding judge, that fact did. not disqualify him from trying the proceeding in contempt. It was not the libel against the judge which constituted the offense for which the respondent was liable as for a contempt of court. The offense consisted in the tendency of his acts to prevent a fair trial of the cause then pending in the court. It is this offense which constitutes the contempt, and for which he could be punished summarily ; and the fact that in committing this offense, he also libeled the judge, and may be proceeded against by indictment therefor, is no reason why he may not and should not be punished for the offense against the administration of justice.
The statute clearly authorizes, as did the common law, courts to punish summarily, as contempts, acts calculated to obstruct their business. They could not be maintained without such power, nor could litigants obtain a fair consideration of their causes in a court where the jury or judge should be subject, during the trial, to influences in respect to the case upon trial, ■calculated to impair their capacity to act impartially between the parties. Nor is there serious danger to the citizen in its ■exercise. Power must be lodged somewhere, and that it is possible to abuse it is no argument against its proper exercise. But we think the danger more imaginary than real. The judgments of all inferior courts are subject to review. We have an untrammeled press, which, in legitimate ways, may properly exert a powerful influence upon public opinion. All judges are liable to impeachment for any misdemeanor in office. Our entire j udiciary is elective, and all courts are thus easily within the reach of the people. These checks can, we think, be relied upon to prove an adequate protection to the citizen against any arbitrary or unreasonable use of the discretion thus given to the courts.
*492 In considering and disposing of the case the court took judicial notice, without knowledge on the part of the respondent that it would be done, of many matters, among them the following :
“ That said respondent left the city of Columbus for his home in Cincinnati, Ohio, on or about the 29th day of February, 1888, under his promise to counsel for the state in the-said trial, then pending, to return as a witness upon a telegram at any time one might be sent him; that he received such-telegraphic notice and answered it on the 5th day of March,, 1888, that he would attend as such witness on the following day ; that instead of so attending, he purposely went beyond the limits of the state of Ohio to evade the service of process of any kind from this court upon him, and so remained until the end of the trial aforesaid; that said respondent attended said trial and drew his pay as a witness for said defendant from said 24th day of January, 1888, until the first day of March, 1888, and then absented himself without leave and in violation of the order of -the court, until said trial ended, and has-since, to-wit: on the 7th day of April, 1888, been tried and adjudged by this court in contempt and fined for such absence and has paid such fine and costs.”
It was competent for the court to take judicial notice of pertinent facts connected with the transaction which came within the cognizance of his own senses. But when the court assumed to take judicial notice of the facts which formed the ground of a previous jmoeeeding for contempt against respondent, and of his being adjudged guilty, we think, the court erred. If the facts were competent to be taken into consideration, which is, at least, very questionable, they were the subject of evidence, and could not be judicially noticed. Proof of a previous like offense is not competent evidence save in a small class of cases where guilty knowledge is a necessary element to be shown by the state, and such proof was not necessary in this case. Beyond this, the proceeding there noticed could have been heard before any other judge of the court, and had it been, the impropriety of taking judicial- notice of what was proven, and of the result, would be apparent to every *493 one; and it is none the less so from the fact that the proceeding may have been heard by the j ndge who tried the case in review. The consideration of this incompetent matter was calculated to have a potent influence in determining the sentence imposed. In a case where the penalty is limited by statute, and the sentence is the lowest allowed by law, and where, upon the whole record, the punishment seems justified, a reviewing court might not feel it a duty to disturb the judgment for an error of the character referred to. But in a case where the penalty is discretionary, and it appears, as in this •case, upon the whole record that the punishment is severe, and the court cannot say that the incompetent matter did not affect the degree of punishment inflicted, we feel compelled to reverse the judgment and remand the cause for further proceedings.

Judgment accordingly.